# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | | |
|---|---|---|
| WAIL SALEM, | ) | |
| | ) | |
| Plaintiff, | ) | No. 12 CV 3141 |
| | ) | |
| v. | ) | Judge Robert W. Gettleman |
| | ) | |
| SHERIFF PAUL KAUPAS, and | ) | Magistrate Judge Maria Valdez |
| WARDEN MICHAEL O'LEARY, | ) | |
| | ) | |
| Defendants. | ) | |

## **MEMORANDUM OPINION AND ORDER**

Plaintiff Wail Salem sued defendants Paul Kaupas and Michael O'Leary for violations of 42 U.S.C. § 1983. In Count I, plaintiff alleges that, while he was a pretrial detainee at Will County Adult Detention Facility ("the Jail"), the Jail violated the Eighth Amendment by conducting too many lockdowns. In Count II, plaintiff alleges that the Jail also violated the Eighth Amendment by having 24-hour lighting in cells. Defendants have moved pursuant to Fed. R. Civ. P. 56 for summary judgment on both counts, arguing that the lockdowns and cell lighting are not violations of plaintiff's constitutional rights. For the reasons stated below, defendants' motion for summary judgment is granted.

### *BACKGROUND*

Plaintiff was a pre-trial detainee at the Jail. Kaupas is the sheriff of Will County, Illinois. O'Leary is the warden of the Jail. Plaintiff alleges that there were 15 lockdowns on an average day, two to five of which were random. He claims that the lockdowns interfered with sleep.

The Jail's policy is to put inmates on lockdown status when performing inmate counts to ensure that the counts are orderly, thorough, and safe. Throughout the day when inmates are out of their cells, the Jail has both scheduled and unscheduled inmate counts to confirm that the record of inmates and their locations is current and accurate. There are scheduled inmate counts at each of the three shift changes and before each of the three meals. In addition to these schedule counts, officers are required to have random inmate counts to ensure the quality of the inmate records.

Inmates are also put on lockdown status for safety reasons. Such lockdowns may occur when there is a fight, a need to search a housing unit, or a medical emergency. Lockdowns are also ordered when the staffing levels are too low, the staff needs to train, or the staff needs to conduct an investigation.

Plaintiff also alleges that large fluorescent lights were kept on in his cell twenty-four hours a day. He alleges that he had no control over the lights. There are four light bulbs in each jail cell. The inmate can choose to turn off two of the bulbs at his discretion. The third bulb is controlled by correctional officers. Jail policy dictates that this bulb be turned off from 11:00 p.m. to 7:00 a.m. The final bulb is 9-watts and remains on at all times. This bulb is kept on at night so correctional officers can see in the cell.

Officers on the 11:00 p.m. to 7:00 a.m. shift are required to visually inspect every cell during routine security checks of each inmate. These routine checks must be conducted every thirty minutes. Visual observations allow staff to prevent inmates from concealing weapons, contraband, or escape devices. The observations also discourage

theft, waste, or destruction of Jail property; encourage adherence to Jail rules; and identify "at risk" inmates who demonstrate self-destructive or suicidal behavior.

## *DISCUSSION*

Defendants have moved for summary judgment pursuant to Fed. R. Civ. P. 56. Summary judgment is appropriate where there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Id. The movant bears the burden of establishing both elements, Becker v. Tenenbaum-Hill Associates, Inc., 914 F.2d 107, 110 (7th Cir. 1990), and all reasonable inferences are drawn in favor of the non-movant, Jones v. Illinois Bell Tel. Co., 2013 WL 5781814, at *3 (N.D. Ill. Oct. 24, 2013) (citing Fisher v. Transco Services-Milwaukee Inc., 979 F.2d 1239, 1242 (7th Cir. 1992)). The court, though, "must distinguish between inferences relating to disputed facts and those relating to disputed matters of professional judgment[.]" Singer v. Raemisch, 593 F.3d 529, 534 (7th Cir. 2010) (citing Beard v. Banks, 548 U.S. 521, 530 (2006)). In matters of professional judgment, even if they are disputed, the court must give "deference to the views of prison authorities." Id. (citing Beard, 548 U.S. at 530). If the movant satisfies his burden, then the non-movant must set forth specific facts showing there is a genuine issue for trial. Nitz v. Craig, 2013 WL 593851, at *2 (N.D. Ill. Feb. 12, 2013). In doing so, the movant cannot simply show that there is some metaphysical doubt as to the material facts. Pignato v. Givaudan Flavors Corp., 2013 WL 995157, at *2 (N.D. Ill. Mar. 13, 2013) (citing Matsushita Elec. Indus. Co., v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Plaintiff alleges that the lockdowns and cell lighting violate the Eighth Amendment's prohibition on cruel and unusual punishment. Defendants correctly note

that the Due Process Clause of the Fourteenth Amendment actually governs plaintiff's claims. Bell v. Wolfish, 441 U.S. 520, 535 n.16 (1979). "[T]he protection afforded by the Due Process Clause is broader than that afforded under the Eighth Amendment." Kingsley v. Hendrickson, 2014 WL 806956, at *5 (7th Cir. Mar. 3, 2014) (citing Lewis v. Downey, 581 F.3d 467, 474 (7th Cir. 2009)). However, "courts frequently consider the [Eighth and Fourteenth Amendment] standards to be analogous." Byron v. Dart, 825 F. Supp. 2d 958, 962 (N.D. Ill. 2011) (quoting Washington v. LaPorte Cnty. Sheriff's Dept., 306 F.3d 515, 517 (7th Cir. 2002) (internal quotation marks omitted). Thus, in analyzing condition-of-detention Due Process claims, courts "use Eighth Amendment case law as a guide[.]" Budd v. Motley, 711 F.3d 840, 842 (7th Cir. 2013) (citing Rice ex rel. Rice v. Corr. Med. Servs., 675 F.3d 650, 664 (7th Cir. 2012)).

A condition of confinement that constitutes "any kind of punishment" or is "arbitrary or purposeless" may violate the Fourteenth Amendment. Antonelli v. Sheahan, 81 F.3d 1422, 1427 (7th Cir. 1996). Consistent with both the Eighth and the Fourteen Amendments, however, a detention facility may impose non-arbitrary conditions or restrictions on pretrial detainees so long as they "do not amount to punishment, or otherwise violate the Constitution." Bell, 441 U.S. at 536-37. "[N]ot every disability imposed during pretrial detention amounts to 'punishment' in the constitutional sense." Kingsley, 2014 WL 806956, at *5 (quoting Bell, 441 U.S. at 537). "We must ask whether a particular action was taken 'for the purpose of punishment or whether it is but an incident of some other legitimate governmental purpose.'" Id. (quoting Bell, 441 U.S. at 538). "[I]f a particular condition or restriction of pretrial detention is reasonably related

4

to a legitimate governmental objective, it does not, without more, amount to 'punishment.'" Bell, 441 U.S. at 540.

"We must accord substantial deference to the professional judgment of prison administrators, who bear a significant responsibility for defining the legitimate goals of a corrections system and for determining the most appropriate means to accomplish them." Overton v. Bazzetta, 539 U.S. 126, 132 (2003). Clearly, maintaining institutional security is a legitimate goal. Caldwell v. Miller, 790 F.2d 589, 596 (7th Cir. 1986).

The Jail seeks to further its legitimate penological goals by putting inmates on lockdown status at certain times. Roughly six scheduled lockdowns are conducted each day at shift changes and meal times. Unscheduled lockdowns are ordered to facilitate the orderly, thorough, and safe completion of mandatory random inmate counts. Additional lockdowns are ordered when necessary to respond to unexpected or unusual circumstances that threaten the safety of the inmates or the staff. Command staff also orders lockdowns to facilitate staff training, conduct investigations, or accommodate for low staff levels. The lockdowns are clearly conducted to improve the safe and orderly operation of the Jail and, thus, are reasonably related to its legitimate goals, including institutional security.

Because the lockdowns are reasonably related to a legitimate goal, plaintiff bears the burden to present "something more" that shows that the lockdowns constitute "punishment." "The Due Process Clause itself does not create a right for prisoners to . . . not to be subjected to lockdowns; only the Eighth Amendment limits these restrictions." See Higgason v. Farley, 83 F.3d 807, 809 (7th Cir. 1996) (citing Smith v. Shettle, 946 F.2d 1250, 1252 (7th Cir. 1991)); see also Antonelli, 81 F.3d at 1430 (citing Smith, 946

5

F.2d at 1252) (dismissing an inmate's claim for arbitrary and capricious lockdowns because inmates have "no general liberty interest in movement outside of his cell guaranteed by the Due Process Clause"). Thus, to show that the lockdowns constitute an unconstitutional punishment, that "something more" must amount to a showing of "atypical and significant hardship." Id.

Plaintiff attempts to satisfy this burden by claiming that the lockdowns interrupted his sleep. To prove unconstitutional sleep deprivation, plaintiff must "adduce evidence that he is being deprived of his sleep on a regular and sustained basis and that the sleep deprivation has affected his physical health." Williams v. Berge, 2002 WL 32350026, at *4 (W.D. Wis. Apr. 30, 2002). Plaintiff has provided no evidence about how often he was deprived of sleep. Plaintiff has provided no evidence about how long he was deprived of sleep in each instance. Plaintiff has provided no evidence of any physical injury. Thus, plaintiff has failed to show that any sleep deprivation imposed an "atypical and significant hardship."

Plaintiff attempts to create a genuine issue of material fact by claiming that two to five random lockdowns occurred each day for no reason, and that lockdowns arbitrarily punished one prisoner for the actions of another. As discussed above, the lockdowns were not actually conducted for irrational or arbitrary reasons; they occurred in compliance with Jail policies that furthered legitimate goals. The Jail's decisions to order lockdowns is a matter of professional judgment which is due deference even at the summary judgment stage, Singer, 593 F.3d at 534. Thus, plaintiff's assertion of his own uninformed belief that lockdowns were arbitrary or capricious is insufficient to create a genuine issue of material fact.

Plaintiff also attacks the Jail's lighting. Each inmate's cell has one 9-watt light bulb that remained on 24/7. These lights allow correction officers to conduct visual inspections every thirty minutes, even during the night. The visual inspections prevent inmates from concealing weapons or contraband, discourage theft or destruction of Jail property, encourage adherence to Jail rules, and identify inmates at risk of suicide or other self-destructive behavior. Thus, the cell lighting is reasonably related to the Jail's legitimate goals, including institutional safety. See Vasquez v. Frank, 290 F. App'x 927, 930 (7th Cir. 2008) ("[T]he undisputed evidence in this case shows . . . that the refusal to turn off the light in Vasquez's cell had a valid penological purpose"). See also Sims v. Piazza, 462 F. App'x 228, 232 (3d Cir. 2012) (citing O'Donnell v. Thomas, 826 F.2d 788, 790 (8th Cir. 1987) ("Continuous lighting has been held to be permissible and reasonable in the face of legitimate penological justifications, like the need for security and the need to monitor prisoners.").

Because the cell lighting is reasonably related to a legitimate goal, plaintiff bears the burden to present "something more" that shows the cell lighting imposes an "atypical and significant hardship" that constitutes "punishment." Plaintiff attempts to satisfy this burden by again claiming sleep deprivation. As described above, plaintiff has failed to even allege how often or for how long he was deprived of sleep or how that deprivation harmed him. Thus, he has not presented any evidence to show that the deprivation imposed an atypical and significant hardship. See also Maddox v. Berge, 473 F. Supp. 2d 888, 898 (W.D. Wis. 2007) (citing King v. Frank, 371 F. Supp. 2d 977 (W.D. Wis. 2005)) (noting that the court previously found "that a 9–watt fluorescent light, even burning 24 hours a day, was not bright enough to violate the inmate's Eighth Amendment

7

rights" and that plaintiffs could prevail only with a showing that the wattage and health effects of the lighting were serious enough to elevate the lighting to a constitutional violation).

Plaintiff attempts to create a genuine issue of material fact regarding the lighting by again citing his own deposition. Plaintiff claims that the 9-watt light in his cell was bright and impaired his ability to sleep. As discussed above, these are insufficient to create a genuine issue of material fact as to whether the lighting constituted punishment. These assertions are also insufficient to create a genuine issue of material fact as to whether the lighting was arbitrary or capricious. The assertions relate neither to the legitimacy of the Jail's goals nor to the reasonable relationship between the lighting and those goals. Even if they did, the decisions to light cells during the night is a matter of professional judgment which is due deference even at the summary judgment stage, Singer, 593 F.3d at 534. Plaintiff has failed to create a genuine issue of material fact that precludes summary judgment.

Because plaintiff has failed either to show the lockdowns and cell lighting were punitive or arbitrary or to create a genuine issue of material fact, the court need not reach defendants' other arguments.

Having failed to satisfy his burden on the motion for summary judgment, plaintiff asks that the court, pursuant to Fed. R. Civ. P. 56(d)(1), (2), deny consideration of the motion or allow time to take discovery. Fed. R. Civ. P. 56(d) requires that the nonmovant show "by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition[.]" Fed. R. Civ. P. 56(d). Plaintiff has failed to attach such an affidavit or declaration. This is fatal to his request. More importantly,

8

plaintiff has failed to explain with specificity why he needs additional discovery. Plaintiff generally asserts that he "cannot present facts essential" to his case, but this assertion does not satisfy the requirement for "specific reasons." Thus, plaintiff has failed to comply with the requirements of Fed. R. Civ. P. 56(d) and his request is denied.

## *CONCLUSION*

For the foregoing reasons, defendants' motion for summary judgment is granted. The court wishes to extend its appreciation to attorney Robert C. Keck, who ably represented plaintiff in this case pursuant to his obligation as a member of this court's Trial Bar. Local Rule 83.11(g).

**ENTER: June 13, 2014**

　　　　　　　　　　　　　　　　　　　　　　　**Robert W. Gettleman**
　　　　　　　　　　　　　　　　　　　　　　　**United States District Judge**